**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Edward Szabo, | ) No. CV 10-2608-PHX-GMS |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Charles L. Ryan, et al., | ) |
| Defendant. | ) |

Pending before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner John Edward Szabo. (Doc. 1). Petitioner has also moved for a stay and abeyance of his petition, and to expand the record. (Docs. 3, 10). He subsequently moved for leave to amend his petition, stating that, since filing his original petition, he has exhausted the claim on which he had moved for the stay and abeyance. (Doc. 15). Magistrate Judge Edward C. Voss has issued a Report and Recommendation ("R & R") in which he recommended that the Court deny the petition with prejudice. (Doc. 13). Petitioner has objected to the R & R. (Doc. 14). Because objections have been filed, the Court will review the petition de novo. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). For the following reasons, the court grants the motion to amend, dismisses the motion for a stay and abeyance as moot, denies the motion to expand the record, accepts the report and recommendation, and denies the petition.

**BACKGROUND**

Pursuant to a plea agreement, Petitioner pled guilty in Pinal County Superior Court on May 4, 2004 to two counts of attempted sexual conduct with a minor in violation of Arizona Revised Statutes ("A.R.S.") § 13-1001(C)(2) (1993) and § 13-1405(B) (1993).[1] Both counts were class three felonies defined as dangerous crimes against children under then-current Arizona law. A.R.S. § 13-604.01 (1993) (current version at A.R.S. § 13-705). A jury trial concerning the existence of aggravating factors followed Petitioner's guilty pleas. After sentencing, Petitioner filed a state petition for post-conviction relief, which was granted in part and denied in part on November 28, 2005. (Doc. 9, Ex. E). On December 22, 2005, the court issued a second order correcting Petitioner's sentence in accordance with the November order's grant of relief. (Doc. 9, Ex. F).

Over the next four years, Petitioner, proceeding initially through counsel and eventually pro se, continued his efforts to obtain post-conviction relief in state court. At one point in this process, the court ordered that videotape evidence be transcribed and that Petitioner's deadline to petition the Court of Appeals be extended until thirty days after the transcript was filed with the court. (Doc. 12, Ex. 2). Petitioner's state post-conviction relief efforts were impeded by many obstacles, including his attorney's failure to inform Petitioner of the fact that he had departed from the public defender's office and ceased working on the petition, the failure of the public defender's office subsequently to acknowledge that the filing deadline had been extended by the court, the failure of the office to transcribe the videotape evidence at all, and its failure to provide Petitioner with his case file for his pro se proceedings. (Doc. 14). He eventually filed a petition for review on February 1, 2010 pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure. (Doc. 9, Ex. H). On April

---

[1] In 1991 and 1993, the dates of the acts to which Petitioner pled guilty, A.R.S. § 13-1405(B) defined sexual conduct with a minor under the age of 14 years as a class two felony. The statute has since been revised so that the relevant age is 15 years. A.R.S. § 13-1405(B) (2010). Petitioner stated during his sentencing that he knew the victim was under the age of fourteen on the date of the offense. (Doc. 9, Ex. A at 12). Since Petitioner pled guilty only to attempt, the crime was classified as a class three felony A.R.S. § 13-1001(C)(2).

29, 2010, the Court of Appeals found the petition untimely. (Doc. 9, Ex. J).

On December 3, 2010, Petitioner filed his Petition for a Writ of Habeas Corpus with the district court. (Doc. 1). In it, he alleged four grounds on which he was held in violation of federal law or the constitution: 1) the trial court abused its discretion when it allowed the prosecution to file an untimely notice of aggravating factors, 2) the court improperly allowed the prosecution to play a videotape that, according to Petitioner, contains false allegations of prior bad acts, 3) the prosecutor improperly commented on the Petitioner's invocation of his Fifth Amendment right to refuse to testify, and 4) the prosecution did not prove any elements of the "sentencing enhancement" beyond a reasonable doubt. (*Id.*). Since he was continuing to pursue Count 4 in state proceedings, he moved for a stay and abeyance of that count while the state proceedings continued. (Doc. 3).

Petitioner's federal petition was filed nearly four years after the date on which the Arizona Court of Appeals found his state post-conviction proceedings had become final. (Doc. 9, Ex. J). Petitioner, however, asks this Court "to determine whether the Arizona Court of Appeals erred" in its ruling. (Doc. 10). Alternately, he argues that the various impediments he faced in proceeding in state court constitute adequate grounds for equitable tolling of his deadline. (Doc. 14). Magistrate Judge Voss recommended that the petition be denied with prejudice because it was filed after the limitations period expired and is not subject to equitable tolling. (Doc. 13). Petitioner objected to the R & R on September 15, 2011. (Doc. 14).

## DISCUSSION

## I.   LEGAL STANDARD

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244–54 "establishes a 1-year statute of limitations for filing a federal habeas corpus petition." *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (citing 28 U.S.C. § 2244(d)(1)). The limitation period begins to run when the state conviction becomes final—either "upon 'the conclusion

of direct review or the expiration of the time for seeking such review.'" *White v. Klitzkie*, 281 F.3d 920, 923 (9th Cir. 2002) (quoting 28 U.S.C. § 2244(d)(1)(A)). This one-year limitation period is statutorily tolled during any time in which a "properly filed" state petition for post-conviction relief is "pending" before the state court, and "must be tolled for the entire period in which a petitioner is appropriately pursuing and exhausting his state remedies." 28 U.S.C. § 2244(d)(2); *Nino v. Galaza*, 183 F.3d 1003, 1004 (9th Cir. 1999).

Courts follow "common usage" and "common understanding" to determine whether a state petition was "properly filed." *Pace*, 544 U.S. at 413. The Supreme Court has held that a state petition "is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" in state court. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original). If a state court rejects a postconviction petition as untimely, regardless of whether that court examined the merits before so dismissing, the petition was not "properly filed." *Pace*, 544 U.S. at 413; *Artuz*, 531 U.S. at 8. A federal court cannot re-examine a state court timeliness ruling to determine if it is erroneous, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

In certain limited circumstances, AEDPA's one-year filing deadline may be equitably tolled. *See Holland v. Florida*, 130 S. Ct. 2549, 2590 (2010). A petitioner is entitled to equitable tolling if he can demonstrate that "(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" to prevent his timely filing. *Pace*, 544 U.S. at 418. Nevertheless, equitable tolling is rare: the Court must "take seriously Congress's desire to accelerate the federal habeas process" and may equitably toll the AEDPA's limitation period only when the test's "high hurdle is surmounted." *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1289 (9th Cir. 1997), *overruled in part on other grounds*, 163 F.3d 530 (9th Cir. 1998).

Equitable tolling is not available merely because of a counsel's ordinary negligence, such as "miscalculating the limitations period." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). However, "where an attorney's misconduct is sufficiently egregious, it may

- 4 -

1   constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute

2   of limitations. *Spitsyn v. Moore*, 345 F.3d 796, 800 (2003) (equitable tolling proper when

3   petitioner hired a private attorney nearly a year before AEDPA deadline and attorney did not

4   answer numerous requests from client, did not file a petition, and did not provide file to client

5   until two months after filing deadline). The Ninth Circuit has held that a petitioner is entitled

6   to equitable tolling when his attorney departs for employment in another state, leaving behind

7   an unusable work product. *Calderon*, 128 F.3d at 1289. Being denied access to one's case

8   file until five days before the filing deadline likewise may provide grounds for equitable

9   tolling. *Lott v. Mueller*, 304 F.3d 918, 924 (9th Cir. 2002). Moreover, equitable tolling may

10  be appropriate when a petitioner is "abandoned" by his attorney and subsequently makes

11  "reasonable efforts to terminate counsel due to his inadequate representation." *Holland*, 130

12  S. Ct. at 2568 (Alito, J., concurring).

13  **II.     ANALYSIS**

14       **A.     MOTION TO AMEND**

15       In his original petition, Petitioner moved for a stay and abeyance on Count 4 while he

16  continued to pursue relief in state court. (Doc. 3). On November 18, 2010, Petitioner had

17  filed  another Notice of Post-Conviction Relief under Rule 32.1 with the state trial court.

18  (Doc. 15, Ex. 1). The Superior Court denied relief on his November 2010 petition on

19  December 16, 2010. (Doc. 15, Ex. 2). The Court of Appeals granted review but denied relief,

20  categorizing the petition as a challenge to its earlier order, and finding it untimely under Rule

21  32.4. (Doc. 15, Ex. 4). The Arizona Supreme Court denied review on September 6, 2011.

22  (Doc. 15, Ex. 6). Since Petitioner no longer has any state claims pending, his motion to

23  amend is granted and his motion for a stay and abeyance is dismissed as moot. The remainder

24  of this Order will refer to his Amended Petition, which differs from his original petition only

25  with regards to the status of the state court proceedings in Count Four. (Doc. 15).

26       **B.     TIMELINESS**

27       Petitioner argues that the Court of Appeals misread the record in its April 29, 2010

28  ruling and erroneously found that the trial court's earlier extension of his filing deadline was

1 limited to challenging the December 2005 resentencing order, rather than the November 2005

2 order granting relief in part and denying relief in part. (Doc. 14). Indeed, all of the actions

3 of Petitioner, his initial counsel, and his subsequent counsel indicate that they understood the

4 extension issued in December of 2009 to apply to the November order. Despite their

5 understanding, described in more detail below, and despite Petitioner's request that this Court

6 revisit the decision of the Court of Appeals, for purposes of federal habeas relief, the finding

7 of a state court regarding the timeliness of a state petition is decisive. *See Pace*, 544 U.S. at

8 414.

9       Petitioner mailed a Notice of Post-Conviction Relief on December 3, 2004, and filed

10 a Petition for Post-Conviction Relief pursuant to Rule 32.1 of the Arizona Rules of Criminal

11 Procedure on September 12, 2005. (Doc. 9, Ex. C, D). Among other claims, Petitioner

12 alleged that a video recording of the victim confronting him was played for the jury despite

13 containing inadmissible statements. (*Id.*). On November 28, 2005, the trial court granted a

14 claim that the sentence did not conform with the sentencing law in place at the time of the

15 offense and denied  Petitioner's other claims. (Doc. 9, Ex. E). On December 22, 2005, the

16 court issued an order, in conforming with the November finding, correcting the minimum

17 required portion of Petitioner's sentence from 85% of the term to 50%. (Doc. 9, Ex. F). The

18 order further directed that the videotape to which Petitioner objected be transcribed and

19 "made part of the record for the purposes of appeal." (*Id.*). Petitioner was granted 30 days

20 to petition the Court of Appeals "for review of the decision in regard to the Petition for Post-

21 Conviction Relief." (*Id.*).

22       On January 9, Petitioner filed a motion requesting that the videotape be produced and

23 transcribed. (Doc, 12, Ex. 1). The court issued an order requiring the government to release

24 the tape to Petitioner's counsel for transcription, and granting Petitioner an extension to file

25 his petition for review until "30 days from the filing of the transcript." (Doc. 12, Ex. 2). The

26 court set no deadline for transcribing the videotape, and made no provision for an alternate

27 deadline if the tape was not transcribed or a transcript not filed. The videotape was provided

28 to Petitioner's counsel at some point before April 19, 2006, on which date counsel filed a

notice acknowledging their receipt. (Doc. 12, Ex. 3). No videotapes were ever transcribed. For reasons discussed in the following section, Petitioner was unable to proceed until June of 2008, when he filed a pro se "Motion to Reinstate" the petition. (Doc. 12, Ex. 6). On October 28, the court ordered that the motion be treated as a successive petition for post-conviction relief. (Doc. 12, Ex. 7). The court appointed Petitioner counsel and found that "prior counsel for the Defendant and Defendant were dilatory in pursuing an additional extension and/or drawing the Court's attention to the issue." (*Id.*).

Through new counsel, Plaintiff filed a Supplemental Petition for Post-Conviction Review on October 8, 2009. (Doc. 9, Ex. G). In it, Petitioner alleged that his previous counsel and the public defender's office had been ineffective because they had failed to transcribe the videotape or to file a petition in a timely fashion, and alleged that the court had improperly allowed the videotape to be presented to the sentencing jury. (*Id.*). On December 9, 2009, the court wrote that the decision granting relief in part and denying relief in part was "dated December 22, 2005," the date of the resentencing order, and did not mention the November 28, 2005 order that in fact granted in part and denied in part claims in the original petition. (Doc. 9, Ex. H). The court denied the petition, but found that Petitioner's failure to file a timely Petition for Review of the December 22, 2005 decision was "through no fault of his own." (*Id.*). It granted him until February 1, 2010 to file such a petition. (*Id.*).

On February 1, 2010, Petitioner, acting through counsel, filed a petition for review of the denial of his petition for Post-Conviction Relief pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure. (Doc. 9, Ex. H). On April 29, 2010, the Court of Appeals found the petition untimely. (Doc. 9, Ex. J). It explained that the December 9, 2009 order had only granted Petitioner an extension to file a Petition for Review of the December 22, 2005 order (which had adjusted his sentence and ordered the videotape transcribed). It found that no extension had been granted for the November 28, 2005 order granting in part and dismissing in part his claims for post-conviction relief. (*Id.*). On May 17, 2010, Petitioner's appointed counsel wrote him with a copy of the memorandum decision, stating "[n]ow you may proceed in Federal Court on a Habeus [*sic*] Corpus Petition. You have exhausted your State

remedies." (Doc. 15, Ex. 5).

Petitioner claims that the appellate decision creates a factual dispute between the trial court, which had extended his deadline until thirty days after the transcription was filed, and the appellate court, which refused to recognize that extension. (Doc. 14). Citing Ninth Circuit precedent, he writes that "when there are conflicts of State court findings of fact, the District Court may hold an evidentiary hearing to determine such relevant facts." (*Id.*). *See Neuschafer v. McKay*, 807 F.2d 839, 841 (9th Cir. 1987) ("[The district court] could not render a decision on the record before it without second-guessing at least one state tribunal."). It is true that 28 U.S.C. § 2254(d) "makes no distinction between the factual determinations of a state trial court and those of a state appellate court." *Sumner v. Mata*, 449 U.S. 539, 546 (1981). In *Neuschafer*, for example, the Ninth Circuit instructed the district court to hold a hearing to resolve a dispute between the Nevada state trial court and the Nevada Supreme Court over whether the petitioner had confessed to a crime before or after requesting an attorney. *Neuschafer*, 807 F.2d at 840. The alleged disagreement between the trial court and the appellate court here, however, is one of law—whether or not the extensions granted to file a petition for review applied only to the re-sentencing order, or whether they applied to the denial of claims in his original petition. (Doc. 14). Although it may be clear from their actions that Petitioner, his original counsel, and his subsequently appointed counsel understood the exceptions to apply to both challenges, the appellate court's ruling on an issue of law is decisive, and does not create a factual conflict with the state trial court. *Pace*, 544 U.S. at 413.

Petitioner alleges that the appellate court misread the state court's minute entry of December 22, 2005, and therefore erroneously understood the order to apply only to the December entry. (Doc. 10). He requests an expansion of the record, stating that examining the transcript of the December 21 hearing will make clear that the transcript of the videotape was requested in order to pursue an appeal of the claims denied on November 28. (*Id.*). He argues that such a transcript "is a relevant and necessary part of the record to determine whether the Arizona Court of Appeals erred" when ruling that his 2010 petition was

1   untimely. (*Id.*). Even were an expanded record granted, and even were it to verify Petitioner's
2   description of the hearing, no relief could follow, because "federal habeas corpus relief does
3   not lie for errors of state law." *Lewis*, 497 U.S. at 780.

4       Accordingly, Petitioner's conviction became final after his thirty-day period to seek
5   relief expired on December 29, 2005. The limitations period began to run on December 30,
6   2005, and expired on December 30, 2006, despite his subsequent petitions. *See Ferguson v.*
7   *Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (state petition filed after the expiration of
8   AEDPA's one-year period does not reinstate limitations period that ended before state
9   petition was filed). Although he continued to file state petitions, and the state court continued
10   to issue orders, including orders extending his filing deadlines, the petitions were eventually
11   found to have been untimely by the Court of Appeals. "When a postconviction petition is
12   untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*,
13   544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 236 (2002)). Statutory tolling is
14   unavailable to render the petition timely.

15   **C.   EQUITABLE TOLLING**

16       The conditions that impeded Petitioner are substantively similar to those that the
17   Supreme Court and the Ninth Circuit have suggested can trigger equitable tolling. *See*
18   *Holland*, 130 S. Ct. at 2590*; Calderon* 128 F.3d at 1289; *Spitsyn*, 345 F.3d at 800. Like the
19   counsel in *Calderon*, Petitioner's counsel resigned from the public defender's office without
20   moving to withdraw from the case and without notifying Petitioner. (Doc. 12, Ex. 11).
21   Petitioner made numerous efforts to contact the public defender's office, seeking either
22   continued representation or his case file through letters written on September 25, November
23   14, and December 14, 2007, and January 14, 2008. (Doc. 9, Ex. G).

24       As was the case in *Spitsyn*, Petitioner was under the impression he was represented
25   by counsel when in fact no work was being done on his behalf. He only learned otherwise
26   when the head of the Public Defender's office wrote him on January 22, 2008, informing him
27   that the public defender's office no longer represented him and stating, incorrectly, that "the
28   Court's ruling was unequivocal in denying the petition." (*Id.*). A member of the office

1   emailed Petitioner's former counsel, who wrote back on February 4, 2008 that the court had

2   ordered that the videotape be transcribed and that "the deadline on the petition for review

3   could be extended until the transcript was completed." (*Id.*). In the email, the former counsel

4   wrote that "I've explained this all to [the head of the public defender's office] previously."

5   (*Id.*). The office apparently did not apparently contact Petitioner after this email, since he

6   again wrote seeking access to his file on April 2, May 12, and June 6, 2008. (*Id.*)

7       Upon learning that the public defenders' office no longer considered itself to be

8   representing him in his efforts to obtain post-conviction relief, Petitioner took immediate

9   action. On June 22, 2008, he filed a pro se petition with the state trial court detailing the

10  unsuccessful efforts he had made to have his previous attorney or the public defender's office

11  pursue his case, or at least provide him with his case file. (Doc. 12, Ex. 6). This petition

12  convinced the court to grant him counsel to proceed, finding that "prior counsel for the

13  Defendant and Defendant were dilatory in pursuing an additional extension and/or drawing

14  the Court's attention to the issue." (Doc. 12, Ex. 7). Even in eventually denying the petition,

15  the court found that Petitioner's failure to file a timely Petition for Review of the December

16  22, 2005 decision was "through no fault of his own." (Doc. 9, Ex. H).

17      Like the petitioner in *Holland*, Petitioner here contacted the State Bar in an attempt

18  to compel his counsel to represent him or produce his file. (Doc. 14, Ex. 1–3). The Bar wrote

19  the public defender's office, and the chief of the office wrote back an undated letter that was

20  received on January 21, 2009, stating that "I believe that this office was remiss in not

21  providing Mr. Szabo with his file in a timely manner." (Doc. 15, Ex. 2). The letter stated,

22  incorrectly, that the November 28, 2005 ruling "denied the Petition for Post-conviction Relief

23  on all grounds asserted" (*Id.*). It did not mention the December 22, 2005 order adjusting

24  Petitioner's sentence, ordering transcription of the videotape, and extending the deadline to

25  appeal the decision in regard to the petition for post-conviction relief. The Bar notified

26  Petitioner that the public defender's office had been "referred to the State Bar's diversion

27  program." (Doc. 15, Ex. 3).

28      Taken as a whole, the impediments faced by Petitioner resemble those that courts have

1    found may constitute an "extraordinary circumstance." *See Holland*, 130 S. Ct. at 2568;

2    *Spitsyn*, 345 F.3d at 800. Petitioner's deadline to file under AEDPA is therefore equitably

3    tolled during the period of time in which Petitioner was denied the representation he had been

4    led to believe was being provided.

5          Nevertheless, equitable tolling does not serve to render this petition timely. Petitioner

6    was fully aware by July 7, 2008 that he was no longer represented, as evidenced by the fact

7    that he filed a motion with the court to appoint counsel on that date. (Doc. 12, Ex. 4). At this

8    point, his former counsel and the public defender's office were not preventing him from

9    filing petitions; in fact he had already filed a pro se "Motion to Reinstate" his complaint on

10   June 22, 2008. (Doc. 12, Ex. 6). Nevertheless, he did not file his initial federal habeas

11   petition until December 2010, nearly a year and a half later. Even tolling Petitioner's filing

12   deadline until July 7, 2008 does not render his initial habeas petition timely. 28 U.S.C. §

13   2244(d)(1).

14         According to his objections, Petitioner did not receive his file from the public

15   defender's office until March 31, 2010, less than a year before he filed his initial petition.

16   (Doc.14). This fact alone, however, does not serve to toll the statute. Even without access to

17   his case file, petitioner must "at least consult his own memory of the trial proceedings."

18   *Battles*, 363 F.3d at 1198. Denying a Petitioner access to a file can provide a grounds to

19   equitably toll the AEDPA deadline so long as the file contains new information not

20   previously available to the petitioner. *Battles*, 363 F. 3d at 1197; *see also Ford v. Hubbard*,

21   330 F.3d 1086, 1105–06 (9th Cir. 2003), *vacated on other grounds by Pliler v. Ford*, 542

22   U.S. 225 (2004). Here, Petitioner's "current claims are about happenings at the time of his

23   conviction . . . [t]here is nothing new about those." *Battles*, 363 F. 3d at 1197. It is further

24   true that Petitioner was never granted access to the transcript of the videotape he requested.

25   From the record, it appears that no transcript was ever made. However, he was present during

26   the recording of the videotape, and he produces quotes that are allegedly on the tape in his

27   Amended Petition. (Doc. 15). Even without the recording or transcription, he could have and

28   did file a petition for federal habeas relief. Furthermore, the lack of access to his file did not

1    prevent Petitioner from filing numerous state post-conviction motions between July 2008 and

2    March 2010. (Doc. 12, Ex. 6–7; Doc. 9, Ex. G). These filings demonstrate that he was able

3    to file petitions, but chose not to do so in federal court. He therefore was not pursuing his

4    federal rights "diligently." *Holland*, 130 S. Ct. at 2590.

5           Most importantly, during the period in which Petitioner was unable to obtain

6    information from his counsel, he was concerned principally with his state, rather than his

7    federal, post-conviction review. His communications with his former counsel and the public

8    defenders office refer to his pending Rule 32 petitions; no mention is made of filing a petition

9    under 28 U.S.C. § 2554 or any other federal statute. (Doc. 12, Ex. G). Had his attorney

10   responded diligently and filed a state petition, Petitioner's later federal petition would have

11   nevertheless been untimely because, as the Court of Appeals later determined, his state

12   conviction had become final in December of 2005. (Doc. 9, Ex. J).  Equitable tolling does

13   not afford Petitioner relief.

14                              **CONCLUSION**

15          Petitioner's state petition for post-conviction relief was granted in part and denied in

16   part on November 28, 2005. (Doc. 9, Ex. E). Although he continued to file subsequent

17   petitions, and the trial court continued to issue orders in response to them, he did not appeal

18   the November 28th order until February 2010, at which point the Court of Appeals found the

19   appeal to be untimely. (Doc. 9, Ex. J). The state court's interpretation of whether a state

20   petition is untimely governs whether a post-conviction process has become final for purposes

21   of AEDPA, and therefore Petitioner's conviction became final on December 29, 2005 and

22   his December 2010 petition was untimely.

23          Petitioner presents evidence that he was unable to pursue his state post-conviction

24   case because of conditions similar to those deemed an "extraordinary circumstance" by the

25   Ninth Circuit and the Supreme Court in granting equitable tolling in federal habeas cases.

26   However, even tolling the statutory deadline for the period during which he was prevented

27   from proceeding, his filing is still untimely under AEDPA. Moreover, he continued to file

28   petitions in state court, suggesting that the circumstances were not preventing him from also

filing in federal court.

**IT IS THEREFORE ORDERED:**

1.      Magistrate Judge Voss's R & R (Doc. 13) is **ACCEPTED**.

2.      Petitioner's **MOTION FOR LEAVE TO AMEND PETITION FOR WRIT OF HABEAS CORPUS** (Doc. 15) is **GRANTED**.

3.      Petitioner's **MOTION FOR STAY AND ABEYANCE** (Doc. 3) is **DISMISSED AS MOOT**.

4.      Petitioner's **MOTION FOR EXPANSION OF THE RECORD** (Doc. 10) is **DENIED**.

5.      Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED WITH PREJUDICE**.

6.      The Clerk of Court shall **TERMINATE** this action.

7.      Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

DATED this 24th day of October, 2011.

_____
G. Murray Snow
United States District Judge